*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 25, 2002**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                    No. 118670

CARMAN A. HARDIMAN,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

At the conclusion of a jury trial in the circuit court, the defendant was convicted of possessing less than fifty grams of heroin with intent to deliver, and possession of marijuana. The Court of Appeals reversed on the ground that the prosecution introduced insufficient evidence of guilt. We reverse because, in our judgment, the evidence *was* sufficient.

I

The Court of Appeals has stated the facts:

On October 22, 1996, police officers executed a search warrant at an apartment in Pontiac.

Although several people were in the hallway outside the apartment, no one was in the apartment when the police entered. Police stopped defendant in the apartment's parking lot sometime during the raid. During the search, officers found in the dining room wastebasket eight plastic sandwich bags, each with one corner cut away.[1] Police also searched the apartment's northwest bedroom and found in a nightstand a letter addressed to defendant at that address, six $10 bags of heroin, a $10 bag of marijuana, $130 in cash, an ID card, and a loan payment book belonging to Rodney Crump. Both male and female clothing were found in the bedroom closet, including a blue denim dress that contained forty $10 packs of heroin in the pocket. Four hundred dollars was found in a sock in a dresser drawer. Written correspondence and a telephone calling card belonging to Crump were found in a television stand. Police also found an unpostmarked letter addressed to defendant in the mailbox of the apartment. [Unpublished opinion per curiam, issued February 6, 2001 (Docket No. 213402).]

On the basis of these proofs, a circuit court jury found the defendant guilty of possession of less than fifty grams of heroin with intent to deliver, and possession of marijuana. MCL 333.7401(2)(a)(iv), 333.7403(2)(d).[2]

The Court of Appeals reversed, finding the proofs to be insufficient. From that judgment, the prosecuting attorney timely applied to this Court for leave to appeal.

---

[1] A police officer testified that, in his experience as a narcotics officer, he had come across instances in which baggies were used to package drugs such as marijuana, crack, powder cocaine, and heroin. The officer explained that the drugs are placed in the corner of the baggie, that portion of the baggie is twisted or tied off, the corner is cut or torn away, and the remaining portion of the baggie is thrown away.

[2] The prosecutor's theory was that defendant and Crump lived in the apartment together and jointly possessed the drugs found in the bedroom. Crump was convicted in a separate trial.

2

The standard for reviewing an issue concerning sufficiency of the evidence has been explained on several prior occasions. *People v Johnson*, 460 Mich 720, 722-723; 597 NW2d 73 (1999); *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 478 (1992)[3]; *People v Hampton* 407 Mich 354, 366; 285 NW2d 284 (1979). Taking the evidence in the light most favorable to the prosecution, the question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.

III

As the Court of Appeals correctly observed, *Wolfe* provides the governing principles for our inquiry:

> A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. Likewise, possession may be found even when the defendant is not the owner of recovered narcotics. Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance.[4]

> The courts have frequently addressed the concept of constructive possession and the link between a defendant and narcotics that must be shown to establish constructive possession. It is well established that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. Instead, some additional connection between the

---

[3] Amended 441 Mich 1201 (1992).

[4] We further observed in *Wolfe, supra* at 520, that constructive possession exists where the defendant has the right to exercise control over the narcotics and has knowledge of their present.

defendant and the contraband must be shown.  [440 Mich 519-520 (citations omitted).]

In the present case, the Court of Appeals said that the evidence did not link the defendant to the drugs.  It found no "direct evidence" that the defendant resided at the apartment or knew about the contraband.  It noted that no fingerprint evidence placed the defendant near the drugs; also, no evidence established that the defendant owned the dress in which the drugs were found.

The Court of Appeals failed to view the evidence in the light most favorable to the prosecution.  Circumstantial evidence suggested the defendant resided in the apartment; both the mailbox and nightstand contained mail addressed to her, and she was found in the rear parking lot.  The contents of the nightstand and closet supported the prosecuting attorney's theory that the defendant and Mr. Crump shared the bedroom.

The dress containing packaged heroin in the closet permitted a reasonable inference that the defendant possessed the drugs.  No evidence that another woman resided at the apartment is in the record.  The packaging of the heroin in the dress suggested an intent to deliver.[5]

---

[5] A police officer testified that the heroin was packaged in four "bundles" or packs of ten.  He explained that heroin is commonly sold on the street as a "bundle."  No paraphernalia associated with the use of drugs was found in this bedroom.  Finally, he testified that, in his opinion, on the basis of all the circumstances, including packaging, the heroin was possessed for delivery, not for personal use.

As detailed above, the evidence that supported the inference of defendant's residence at the apartment was strong: two letters addressed to defendant were found at the residence—one in the mailbox and one (correspondence from a local government agency) in a nightstand in the bedroom. Women's clothing was found in the bedroom closet. Additionally, defendant was found by the police in the parking lot behind the apartment. Viewed in a light most favorable to the prosecution, this evidence permitted as a reasonable inference that defendant resided in the apartment. Regarding the claim that the letter addressed to defendant might have been found in one nightstand, while the cocaine, marijuana, and items of identification pertaining to Rodney Crump might have been found in another nightstand, there is no evidence that there was more than one nightstand in the bedroom. The opinion of the Court of Appeals states that the police "found in a nightstand a letter addressed to defendant at that address, six $10 bags of heroin, a $10 bag of

---

Although defendant has challenged the sufficiency of the proofs generally, she has not specifically challenged the sufficiency of the evidence regarding intent to deliver. Intent to deliver can be inferred from "the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Wolfe, supra* at 524. The evidence in this case, including the quantity and packaging of the narcotics, along with the discarded baggies with one corner cut off and the lack of use paraphernalia, is sufficient to justify a finding that the possessor intended to deliver the drugs. See *People v Konrad,* 449 Mich 263, 271, n 4; 536 NW2d 517 (1995).

marijuana, $130 in cash, an ID card, and a loan payment book belonging to Rodney Crump." Slip op at 1. (Emphasis supplied.) Viewing the evidence in a light most favorable to the prosecution, *Wolfe, supra* at 515, and recognizing that "possession may be joint," *id.* at 520, we must conclude that a rational trier of fact could have decided that the presence of the letter in the nightstand supported the reasonable inference that defendant possessed—even if jointly—the drugs that were also located in that nightstand.

Next, the prosecution's decision not to directly demonstrate that the dress in the closet fit defendant did not invalidate the reasonable inference that it was her dress. "Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Konrad,* 449 Mich 263, 273, n 6; 536 NW2d 517 (1995). The prosecution was not required to prove a negative: that the dress could not have belonged to some other unknown female. In light of the clear evidence that defendant resided in the apartment, and specifically in the northwest bedroom of the apartment, the presence of women's clothing in the closet of that bedroom supported the reasonable inference that such clothing—including the dress—belonged to defendant.

All these attacks on the verdict essentially coalesce around the proposition that the jury violated the rule articulated in *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974), that established that an inference can not be built upon an inference to establish an element of the offense. This is indeed the black letter holding of *Atley* standing alone. However, virtually from the time of its publication, *Atley* was apparently felt to be unworkable and has been the subject of judicial redefinition by a series of decisions.

Before discussing those cases, however, it is useful to understand the conceptual problems with forbidding the building of an inference upon an inference. It appears that the doctrine forbidding the piling of an inference upon an inference arose from the intuitive view that circumstantial evidence was less probative or reliable than direct evidence. Despite its initial appeal, this view is hard to justify as a logical proposition and has accordingly been assailed by legal scholars. One is the distinguished commentator in the field of evidence, Professor John Henry Wigmore, who dismissed the doctrine as follows:

> It was once suggested that an inference upon an inference will not be permitted, i.e., that a fact desired to be used circumstantially must itself be established by testimonial evidence, and this suggestion has been repeated by several courts and sometimes actually has been enforced.

> * * *

> There is no such orthodox rule; nor can there be. If there were, hardly a single trial could be

7

adequately prosecuted. . . . In these and innumerable daily instances we build up inference upon inference, and yet no court (until in very modern times) ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials proceed upon such data. The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon. [1A Wigmore, Evidence (Tiller rev), § 41, pp 1106, 1111.]

Courts attempting to cabin the "fallacious and impractical limitation" of this theory are many, including the United States Court of Appeals for the First Circuit, in *Dirring v United States,* 328 F2d 512, 515 (CA 1, 1964), which gave the rule a gloss that left little of the original doctrine. The court stated:

The defendant cautions us against "piling inference upon inference." As interpreted by the defendant this means that a conviction could rarely be justified by circumstantial evidence. . . . The rule is not that an inference, no matter how reasonable, is to be rejected if it, in turn, depends upon another reasonable inference; rather the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt. . . . If enough pieces of a jigsaw puzzle fit together the subject may be identified even though some pieces are lacking.

Echoing this analysis, the Arizona Supreme Court, in recently abandoning what it referred to as the "obsolescent inference upon inference rule," cited Wigmore's observation that the rule "was based on the assumption that circumstantial evidence is intrinsically weaker than testimonial evidence"

8

and then rejected that view, stating that "[i]t is now well-settled, however, in Arizona and elsewhere, in civil and criminal cases, that direct and circumstantial evidence have equal probative worth." *Lohse v Faulkner,* 176 Ariz 253, 259; 860 P2d 1306 (1992).[6]

Following an approach similar to the First Circuit's in *Dirring,* our courts have parsed and refined terms so as to leave little remaining of *Atley*. In fact, it was criticized, but not explicitly rejected, by this Court in *People v Nowack,* 462 Mich 392, 403, n 2; 614 NW2d 78 (2000), after we had earlier made clear in *People v VanderVliet,* 444 Mich 52, 61; 508 NW2d 114 (1993), our disillusionment with the rule by quoting Professor Edward J. Imwinkelreid:

> At one time, several American jurisdictions adhered to the view that an inference cannot be based upon another inference. That view made it difficult to introduce evidence which relied on lengthy chains of inference for its logical relevance. In particular, that view made it difficult to introduce uncharged misconduct evidence which relied on intermediate inferences for its relevance. Modernly, the courts have discredited the "no inference on an inference" rule. The acid test is logical relevance, and a logically relevant act is admissible even when the finding of logical relevance requires a long chain of intervening inferences. [Imwinkelreid, Uncharged Misconduct Evidence, § 2:18, p 98.]

---

[6] See also *Commonwealth v Dostie,* 425 Mass 372, 375-376; 681 NE2d 282 (1997)("In cases where circumstantial evidence is introduced, we have never required that *every* inference be premised on an independently proven fact; rather, we have permitted, in carefully defined circumstances, a jury to make an inference based on an inference to come to a conclusion of guilt or innocence").

The way for *VanderVliet* and *Nowack* was made easier by the handling of the doctrine by our Court of Appeals in *People v Orsie,* 83 Mich App 42, 46; 268 NW2d 278 (1978).  There the Court first observed that the *Atley* Court had admitted that the doctrine "is a very difficult concept at best," and then noted that the doctrine is now "generally discredited" and held in "ill repute."  Quoting from an Indiana Supreme Court case, *Shutt v State,* 233 Ind 169, 174; 117 NE2d 892 (1954), the Court narrowed the doctrine by confining its applicability as follows:  "an inference cannot be based upon evidence which is uncertain or speculative or which raises merely a conjecture or possibility."  *Orsie, supra* at 47.  This, of course, implicitly allows inferences that are logical and reasonable, much as the *Dirring* court discussed.  The *Orsie* Court concluded that there was "nothing inherently wrong or erroneous in basing a valid inference upon a valid inference" and concluded that this was not contrary to Supreme Court precedent, but rather, was "consistent with the substance of those decisions."  *Id.* at 48.

In further clarifying the *Orsie* reading of *Atley*, the Court of Appeals in *People v McWilson,* 104 Mich App 550, 555; 305 NW2d 536 (1981), held:

> [T]he fact-finder is not prevented from making more than one inference in reaching its decision. That is, if each inference is independently supported by established fact, any number of inferences may be combined to decide the ultimate question.

10

*McWilson*, which was, of course, the effort of a Court of Appeals panel that was unhappy, but nevertheless bound by *Atley*, is an improvement because it narrowed *Atley*. Yet, that having been said, the Court of Appeals was constrained to stay within the template of *Atley*. This Court is not so constrained; the fact is *Atley* is flawed and must be overruled. *Atley* does not comport with the later-enacted rules of evidence and, in particular, with MRE 401, which defines relevant evidence as that having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus, if evidence is relevant and admissible, it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences. The MRE 401 test is, as Professor Imwinkelreid has articulated, "logical relevance."

Accordingly, when reviewing sufficiency of the evidence claims, courts should view all the evidence—whether direct or circumstantial—in a light most favorable to the prosecution to determine whether the prosecution sustained its burden. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. In compliance with MRE 401, we overrule "the inference upon an inference" rule of *Atley* and its progeny.

11

To focus now on inferences, without the evidentiary distortions occasioned by *Atley*, we can deduce that the presence of forty $10 packets of heroin in the dress supported the reasonable inference that *whoever* owned the dress had knowledge of the presence of that substantial quantity of heroin in the pocket. The inference that the dress belonged to whoever resided in the bedroom was supported by the recognition that, ordinarily, clothes in a bedroom closet belong to the occupants of the bedroom. Defendant's identity as the female occupant of the bedroom could be inferred by the letter addressed to her that was found in the nightstand, an inference that was also supported by the letter in the mailbox and defendant's apprehension in the adjoining parking lot. Therefore, given the reasonable inferences outlined above, each of which are supported by established facts, it was an entirely reasonable conclusion that the dress belonged to defendant and that she knew there were forty $10 packets of heroin in the pocket.

In this case, all the evidence, direct and circumstantial,[7] as well as all reasonable inferences that may be drawn therefrom, when viewed in a light most favorable to the prosecution, *Wolfe, supra*, is sufficient to support defendant's conviction beyond a reasonable doubt.

---

[7] As we emphasized in *Wolfe, supra* at 526, "circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." (Citation omitted.)

Despite acknowledging the requirement that we view the evidence in a light most favorable to the prosecution, Justices Kelly and Cavanagh, in our view, prefer considering the evidentiary inferences from defendant's perspective.

Justice Kelly acknowledges that "the jury reasonably could have stretched and inferred that defendant resided in the apartment." *Post* at 4. This is an admission that should end the inquiry. Yet she continues by offering various alternative hypotheses, favorable to defendant, that could be drawn from the evidence. She suggests that sometimes people send mail to addresses other than where they live and then opines that defendant could have come to the parking lot only to pick up her mail. *Id.* While such alternate explanations are *possible*, they are not the proper test of the proofs. The reason is that the prosecution is only required to produce sufficient evidence to establish guilt; it is not required to negate every reasonable theory consistent with a defendant's innocence. *Konrad, supra* at 273, n 6 (opinion by Brickley, C.J.).

Justice Cavanagh, while willing to overrule *Atley* and affirm a conviction built on inferences derived from circumstantial evidence, argues that more evidence—fingerprints and the admission of the actual dress into evidence—would have made the case easier for the jury. No one would contest this point, nor would they likely contest that in every case hindsight can always conjure up additional

13

investigative actions that could have been beneficially undertaken.  Yet these actions would still only constitute *additional* circumstantial proof of defendant's residency in the apartment and her ownership of the dress.  If the prosecution produced sufficient evidence—and we have concluded that it did—that is all that is required.  *Konrad, supra.*

Once having found that the jury could reasonably draw the inferences that it did, and that the evidence, considered with those inferences, was sufficient to establish defendant's guilt beyond a reasonable doubt, the review of the appellate court is complete.[8]  Such alternative musings as are offered by the dissents are not the stuff of appellate criminal review.  Jurors determine the weight of the evidence; we do not.  As we said in *Wolfe, supra* at 514-515:

> [A]ppellate courts are not juries, and even when reviewing the sufficiency of the evidence, they must not interfere with the jury's role:
>
> [An appellate court] must remember that the jury is the sole judge of the facts.  It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact. . . .  Juries, not appellate courts, see and

---

[8] The assertion by the dissent that the majority does not agree that the evidence must meet the sufficiency requirement of *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979)—and *Hampton*, *Wolfe,* and *Johnson, supra*—is incorrect.  We have plainly stated that the *Jackson/Hampton* standard controls the determination whether the evidence was sufficient, and we have applied the *Jackson/Hampton* standard in our analysis.  Our difference with the dissent is that we have concluded, applying that standard to the facts of this case, the inferences that could be drawn from the evidence by the jury are reasonable and the circumstantial evidence of defendant's guilt is therefore sufficient.

14

> hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony. [Citation omitted.]

In summary, then, it is simply not the task of an appellate court to adopt inferences that the jury has spurned.

Thus, the evidence, when viewed as a whole and in a light favorable to the prosecution, was sufficient to support a finding that the defendant was guilty beyond a reasonable doubt. We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

CORRIGAN, C.J., and WEAVER, YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                      No. 118670

CARMAN A. HARDIMAN,

    Defendant-Appellee.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I agree that the "inference on an inference" rule, articulated in *People v Atley*, 392 Mich 298; 220 NW2d 465 (1974), is internally inconsistent and should, therefore, be rejected, in spite of its deceptive utility as a bright-line safeguard against the admission of evidence lacking sufficient relevance. The concerns over tenuous evidentiary links, that resulted in the adoption of the rule in *Atley,* have eased with the enactment of the rules of evidence. Evidence–direct or circumstantial–may only be admitted when relevant and not more prejudicial than probative. MRE 401, 403. In addition, where the evidence fails to establish guilt beyond a reasonable doubt, a court must order a directed verdict. *People v Patrella*, 424 Mich 221, 275; 380 NW2d 11 (1985) ("While the

trier of fact may draw reasonable inferences from facts of record, it may not indulge in inferences wholly unsupported by any evidence, based only upon assumption"). These evidentiary tests more adequately protect the harms *Atley* attempted to prevent. Therefore, I concur with the majority's rejection of *Atley*.

However, I dissent from the Court's conclusion that the evidence was "sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe,* 440 Mich 508, 513-514; 489 NW2d 478 (1992). Viewing the evidence in the light most favorable to the prosecution, a rational juror could *infer* the existence of the facts necessary to establish the elements of the crimes with which defendant was charged. However, I disagree that those facts were proven so that a rational juror could find their existence *beyond a reasonable doubt*. *Id*. The officers tested nothing in the apartment for fingerprints. Nor did they seize the dress in which the heroin was found; only its photo was admitted in evidence. No evidence linked the dress to defendant, other than the circumstantial evidence of residence on the basis of the mail found at the apartment. Clearly, the evidence did not prove beyond a reasonable doubt that defendant knew of the presence of the controlled substances.

In an attempt to rebuff its dissenting colleagues, the majority implies that the discovery of reasonable inferences

supporting the elements of a crime charged will end the inquiry demanded by due process guarantees. However, this ignores the Supreme Court mandate in *Jackson v Virginia*, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979), that appellate courts review the evidence to determine if a rational trier of fact could find guilt beyond a reasonable doubt. See also *Wolfe; People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979) (adopting *Jackson* and holding that a trial judge must review a directed verdict motion to ensure that a rational trier of fact could find guilt beyond a reasonable doubt).

In adopting this standard, the Supreme Court expressly considered and rejected the notion that the existence of *any* evidence to support a conviction would satisfy due process requirements. *Id.* at 320. An appellate court has "a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction . . . ." *Id.* at 318. A "mere modicum" of evidence is insufficient. *Id.* at 320. Rather, reviewing judges must do more than simply identify an inference; the evidence admitted must be sufficient so that a rational trier of fact could find the elements of the crime established beyond a reasonable doubt. In particular, where an element of a crime is supported only by an inference establishing a mere modicum of proof–even if the inference itself is "reasonable"–a conviction cannot stand.

Thoughtful judges in the courts below will continue to

respect the mandate to which they are bound, affirming convictions only when a rational trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. Because the evidence does not establish guilt *beyond a reasonable doubt,* I would affirm the result of the Court of Appeals. To hold otherwise would ignore the second step in the inquiry articulated in *Wolfe* and *Jackson,* and the judiciary's duty to ensure that all elements of a crime be proven beyond a reasonable doubt.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                No. 118670

CARMAN A. HARDIMAN,

    Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

The Court of Appeals found insufficient evidence to support defendant's convictions of possessing marijuana and possessing heroin with intent to deliver. The majority on this Court has reversed that ruling, concluding that the panel failed to view the evidence in the light most favorable to the prosecution.

The majority's decision is plausible only through an exaggeration of the strength of the prosecutor's evidence and the allowance of stacked inferences. Because I believe that the Court of Appeals correctly found the evidence insufficient, I respectfully dissent.

I also disagree with overruling the "no inference on an inference" rule from *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974).  In erasing that twenty-eight-year-old precedent, the majority has increased the likelihood that future criminal convictions will be based more on speculation than on facts. I would leave *Atley* intact.

I

The crimes of possession of marijuana and possession with intent to deliver less than fifty grams of heroin both require proof of possession.  See MCL 333.7403; *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 478 (1992).  The key question in this case is whether, when the evidence is viewed most favorably to it, the prosecution carried its burden of showing knowing possession beyond a reasonable doubt.

In establishing the element of possession,

"[t]he ultimate question is whether, viewing the evidence in a light most favorable to the government, the evidence establishes a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised a dominion and control over the substance."  [*Id*. at 521, quoting *United States v Disla*, 805 F2d 1340, 1350 (CA 9, 1986).]

Reasonable inferences can be made from the facts presented, but the trier of fact cannot "indulge in inferences wholly unsupported by any evidence, based only upon assumption." *People v Petrella*, 424 Mich 221, 275; 380 NW2d 11 (1985).

The prosecution's theory in this case was that defendant

2

constructively possessed the marijuana and heroin that police located in an apartment. Constructive possession requires evidence showing that the accused knew about the drugs and could exercise control over them. The fact is that defendant was never found to be present in the apartment in question. She was in a nearby parking lot. Showing that she was in the vicinity was not sufficient to prove that she constructively possessed the drugs. *Wolfe*, *supra* at 520.

II

It is without dispute in this case that no evidence directly linked defendant to the drugs. There was no claim that her fingerprints were on the container of marijuana located in a nightstand in a bedroom. Heroin was found in the pocket of someone's dress in a closet. Cross-examination showed that the police did not attempt to size the dress or in any other way identify it as belonging to defendant. The record did not even show how many people lived in the apartment.

The evidence that was alleged to connect defendant to the drugs, all circumstantial, consisted of (1) one piece of mail addressed to her and found in the mailbox and one piece found in a drawer, which drawer may or may not have contained marijuana, (2) defendant's presence in a nearby parking lot, and (3) an unidentified dress in a bedroom closet with heroin

in the pocket.  The majority concludes that the sum of this evidence permits the inferences that defendant lived in the apartment and possessed the marijuana and heroin found there. I disagree.

From the evidence of the letters and defendant's presence in the parking lot, the jury reasonably could have stretched and inferred that defendant resided in the apartment.  This is inference number one.  Even viewed in a light most favorable to the prosecution, it is weak.  People sometimes have mail sent to an address where they do not live.  Among other possibilities, defendant could have come to the parking lot to pick up her mail.  The fact that it is such a weak inference takes on great significance when one realizes how much depends on it.

The jury could have inferred that defendant had control over the drawer containing marijuana only on the basis of the inference that she lived in the apartment.  From that it could have inferred that she knew of the marijuana and exercised control over it.  On the basis of the inference that she lived in the apartment, it could have inferred that the dress in the closet belonged to her.  From that it could have inferred that she knew of and possessed the heroin in the dress pocket. These are inferences two, three, four, and five.

But the jury could not have reached the second and fourth

4

inferences without having the first on which to base them.  It could not have reached the third and fifth inferences without having the second and fourth on which to base them.  Thus, the finding of guilt must be made on the basis of stacked inferences.  The evidence fails to sustain the inferences needed to find defendant guilty.

### III

In this case, the great value of the *Atley* "no inference on an inference" rule is that its application leaves no lingering doubt that the evidence will not support the verdict.  The rule has received some criticism in case law and from legal scholars, but the majority's overruling of it today is unwarranted and dangerous.

The rule provides a needed scale on which to weigh inferences.  It forces an assessment of whether they are both reasonable and supported by facts introduced in evidence.  It deters speculation based on unfounded inferences, making it less likely that a weak case will succeed.  In so doing, it reinforces a fundamental principle of criminal law, that guilt must be established beyond a reasonable doubt.

Criticism of the rule should be weighed against the fact that it serves a useful purpose and has done so for decades.[1]

---

[1] The "no inference on an inference" rule was initially adopted by this Court eighty-four years ago in the context of
(continued...)

5

The reasoning of the majority in discarding it is unpersuasive.

## IV

I agree with Justice Cavanagh's position that the evidence was not sufficient to prove defendant's guilt beyond a reasonable doubt. Evidentiary rule MRE 401 defines relevant evidence. The rule does not state that all inferences are permissible. Nor does Michigan case law permit such a conclusion. Rather, inferences must be reasonable. See *Petrella, supra*. The inferences that must be drawn here respecting defendant's knowledge of and control over the drugs found in the apartment are not reasonable.

## V

No matter how favorably to the prosecution one views the evidence here, a rational factfinder could not conclude beyond a reasonable doubt that defendant constructively possessed the drugs. Application of *Atley*'s "no inference on an inference"

---

[1] (...continued)
civil matters. See, e.g., *Ginsberg v Burroughs Adding Machine Co*, 204 Mich 130; 170 NW 15 (1918). Forty-seven years ago, it was applied to criminal law in *People v Petro,* 342 Mich 299; 70 NW2d 69 (1955).

Since then, numerous cases have relied on the rule in criminal appeals. See, e.g., *People v Blume*, 443 Mich 476, 485-486, n 14; 505 NW2d 843 (1993); *People v McGregor*, 45 Mich App 397; 206 NW2d 218 (1973); *People v Smith*, 21 Mich App 717; 176 NW2d 430 (1970); *People v Eaves,* 4 Mich App 457; 145 NW2d 260 (1966).

6

rule confirms it. The evidence is too weak to support the convictions. Moreover, the majority's decision to overrule *Atley* impedes the proper administration of justice. It removes a safeguard designed and used for decades to prevent a finding of guilt based on speculation, alone.

I would affirm the Court of Appeals conclusion that the evidence is insufficient to support the convictions of possession and possession with intent to deliver. In addition, I would reaffirm the significance and viability of the "no inference on an inference" rule established in *Atley*.