# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 21, 2016

Plaintiff-Appellee,

v

No. 325935
Wayne Circuit Court

DARNELL HENRY CHEATHAM,

LC No. 13-010689-FC

Defendant-Appellant.

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of first-degree felony-murder, MCL 750.316(1)(b), first-degree arson, MCL 750.72(1)(a) (arson of a dwelling house), torture, MCL 750.85, first-degree child abuse, MCL 750.136b(2), and mutilation of a human body, MCL 750.160.[1] The trial court sentenced defendant to concurrent sentences of life in prison without parole for the felony-murder conviction, 7 to 20 years for the arson conviction, life in prison for the torture conviction, 10 to 15 years for the first-degree child abuse conviction, and 23 months to 10 years for the mutilation of a human body conviction. We vacate defendant's torture conviction and affirm in all other respects.

Defendant's convictions arise from the death of the five-year old victim. The victim was discovered missing from her home on Burlingame Street in Detroit on July 24, 2011, and her burned body was found later that day in an abandoned house on Waverly Street, which is 14 streets away. According to Dr. Leigh Hlavaty, the medical examiner, the victim died of asphyxiation related to being strangled before her body was burned.

Defendant challenges the sufficiency of the evidence to support his convictions of felony-murder, first-degree child abuse, and torture. As this Court stated in *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014):

---

[1] The jury also convicted defendant of second-degree murder, MCL 750.317, but the trial court vacated that conviction at sentencing. These convictions stem from defendant's second jury trial. The first trial resulted in a mistrial after the jury was unable to reach a verdict.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt. [Citations omitted.]

When reviewing a challenge to the sufficiency of the evidence,

[a]ll conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented. [*People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015), appeal held in abeyance ___ Mich ___; 872 NW2d 492 (2015) (citations and quotation marks omitted).]

"Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002). Nor is the prosecution required to prove a negative. *Id*. at 424. "[I]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences," and there is no prohibition on building inference upon inference. *Id*. at 428.

"To evaluate the sufficiency of the evidence, we review the evidence in the context of the elements of the charged crimes." *Bosca*, 310 Mich App at 16.

## I. FIRST-DEGREE FELONY-MURDER

The elements of felony murder are (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. First-degree child abuse is an enumerated felony. [*Lane*, 308 Mich App at 57-58 (citations omitted).]

Defendant does not dispute that the victim was killed, but argues that there was no evidence that he was the person who killed her. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Quanita Smith, who was defendant's girlfriend, identified defendant in a video that was taken at a gas station near the Waverly house at approximately 7:44 a.m. Notably, this individual in the video purchased $2

worth of gas but only pumped $0.41 worth. Additionally, Terrena Long testified that she saw defendant before 8:00 a.m. walk up the street carrying an Arizona Iced Tea can. She noted that defendant had "a funny walk," which she described as "not a limp but a dip in the walk." She saw defendant walk inside the vacant house on Waverly with the can and then shortly thereafter leave with nothing in his hands. Approximately 10 minutes later, Long saw that the house was smoking. There also was evidence introduced that defendant received a bullet wound to his knee two months before this incident, which caused him to walk with a limp of some kind thereafter.[2] All of this evidence, although circumstantial, was sufficient for the jury to find that defendant went into the Waverly house with an Arizona Iced Tea can full of gasoline and set the fire, which burned the victim's body.

In addition to the evidence that defendant burned the victim's body on the morning of July 24, 2011, Quanita testified that she saw defendant with the victim on top of him in the bed sometime in the early morning of July 24, 2011. Based on the victim's movement, the fact that she was sitting on defendant's private area, and the placement of defendant's hands on the victim's waist, the jury reasonably could infer that, despite the lack of any DNA evidence implicating defendant, defendant was engaged in sexual contact with the victim.

Based on the reasonable inference that defendant had some kind of sexual contact with the victim that morning and the circumstantial evidence that he later burned her body, the question is whether it can reasonably be inferred that defendant was the person who killed the victim by strangling or smothering her. The record is devoid of evidence, however, regarding where or when the victim was killed, how she was taken to the house on Waverly, or whether she was alive at that time.

Although there is no direct evidence that defendant killed the victim, the inescapable inference from defendant's sexual contact with the victim, which placed him as the last person with the victim alive, and his subsequent burning of her (already deceased) body shortly thereafter, is that defendant also killed the victim in the interim. Defendant's setting of the fire can be considered as evidence of defendant's guilt of murder because it demonstrates that defendant was attempting to destroy evidence. See *People v Lytal*, 119 Mich App 562, 575; 326 NW2d 559 (1982). Although the evidence established that defendant did not have a car, and it was not clear exactly how defendant transported the victim to the house, this is not an element of any of the offenses. In any event, there was evidence that a white Crown Victoria was seen in the early morning hours at the Waverly house before the fire was set, and there was evidence that defendant was associated with a white Crown Victoria. Therefore, we hold that there was sufficient evidence to support the finding that defendant was the one who killed the victim.

## II. FIRST-DEGREE CHILD ABUSE

Defendant also argues that there was insufficient evidence of the intent element of first-degree child abuse. MCL 750.136b(2) provides the following: "A person is guilty of child

---

[2] While defendant testified that at the time of the victim's death, he no longer had the limp, the jury was free to not believe this assertion.

abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child. Child abuse in the first degree is a felony punishable by imprisonment for life or any term of years." Thus, "[t]he elements of first-degree child abuse are (1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997) (footnote omitted).

"The plain language of the statute requires that to be convicted of first-degree child abuse, a person knowingly or intentionally causes serious physical harm or serious mental harm to a child." *People v Maynor*, 470 Mich 289, 295; 683 NW2d 565 (2004) (citations and quotation marks omitted). " 'Serious physical harm' means any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." MCL 750.136b(1)(f).

Dr. Hlavaty testified that the victim died of asphyxiation related to being strangled and possibly smothered. The victim had five hemorrhages, or areas of bleeding, in her neck. Dr. Hlavaty was certain that strangulation was part of the victim's death, but she could not exclude smothering as a cause. Dr. Hlavaty testified that in order to strangle someone, pressure must "be constantly maintained tightly on the neck" for 2 or 2-1/2 minutes before the person would die.

Viewing the evidence in the light most favorable to the prosecution, the jury could have found that pressure was applied to the victim's neck long enough to cause the hemorrhages. From these injuries, the jury could reasonably infer that defendant intended to cause, or at least had knowledge that he was causing, internal injury to the victim. Only minimal circumstantial evidence is required to establish intent and intent may be inferred from all the facts, including the nature of the injuries. See *Bosca*, 310 Mich App at 16; *People v Howard*, 226 Mich App 528, 550; 575 NW2d 16 (1997) (stating that nature and extent of injuries is probative of intent).

Defendant argues that, even accepting Andre Hall's impeachment testimony that Quanita said that defendant had his hand over the victim's mouth and nose, this testimony suggests that the death was inadvertent. Hall's testimony was admitted for impeachment only and cannot be used to establish the elements of the crime. Nonetheless, while Quanita's statements perhaps suggested that defendant lacked the intent to kill, the nature of the victim's injuries lead to the reasonable inference that defendant at least knowingly caused internal injury to the victim.

## III. TORTURE

Defendant further argues that there was insufficient evidence to prove the elements of torture. The statute proscribing torture, MCL 750.85(1), provides:

> A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.

Thus, the elements of torture are (1) the intent to cause cruel or extreme physical or mental pain and suffering, (2) the infliction of great bodily injury or severe mental pain or suffering, and (3) the victim is within the person's custody or physical control.

-4-

Defendant's argument relates to the *mens rea* element, which requires that the prosecution prove that defendant intended to cause cruel or extreme physical or mental pain and suffering. And with regard to this element, " '[c]ruel' means brutal, inhuman, sadistic, or that which torments." MCL 750.85(2)(a). Even if defendant intended to cause internal injury when he strangled or suffocated the victim, there is nothing to suggest that he intended to cause the victim pain, let alone "cruel or extreme" pain. Also, relying on the nature of the victim's injuries alone does not lead to an inference that defendant intended to cause cruel or extreme physical pain and suffering. Accordingly, we vacate defendant's conviction for torture.

We vacate defendant's torture conviction but affirm his remaining convictions.


/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello