# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 28, 2014

146496

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

      SC: 146496
      COA: 306858
      Cheboygan CC: 10-004267-FH

SUZANNE FAY LAFOUNTAIN,
      Defendant-Appellant.

_____/

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we AFFIRM the result reached in the November 20, 2012 judgment of the Court of Appeals. "[R]eview[ing] the evidence in the light most favorable to the prosecutor," as we are obligated to do, we conclude that "a rational trier of fact could find the defendant guilty beyond a reasonable doubt," *People v Smith-Anthony*, 494 Mich 669, 676 (2013), of operating a methamphetamine laboratory involving a firearm. (Citation and quotation marks omitted.) A defendant is guilty of this offense when he or she operates a methamphetamine laboratory and this operation "involves the possession, placement, or use of a firearm or any other device designed or intended to be used to injure another person . . . ." MCL 333.7401c(2)(e). "[A]ctual possession is not required; constructive possession is sufficient." *People v Minch*, 493 Mich 87, 91 (2012). " '[A] person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . .' " *Id.* at 92 (citation omitted). In this case, defendant only disputes whether there was sufficient evidence to support the jury's finding that her operation of a methamphetamine laboratory "involve[d] the possession, placement, or use of a firearm." The term "involve" means "to include within itself or its scope." *Random House Webster's College Dictionary* (2005). See also *The Merriam-Webster Dictionary* (2005) ("[T]o have as part of itself : INCLUDE[.]"); *Oxford English Dictionary* (2d ed) ("To include; to contain; imply."). We rely on this definition of "involve" rather than the dissent's definition of "to relate closely : CONNECT" because the former seems to be more consistently cited in dictionaries than the latter and thus seems to be the most ordinary understanding of the word "involve"; however, we would reach the same result here even had we adopted the latter definition. Given that there was evidence that defendant had lived at the house at issue for five years; that the firearms were found in plain view in the bedroom of defendant's children, a room that defendant admitted she was in on a regular basis; that the firearms had been in this room for some period of time; and that this room was immediately across the hallway from defendant's own bedroom, which also served as the methamphetamine laboratory, a rational trier of fact could find beyond a reasonable doubt that defendant constructively possessed the firearms and that

defendant's operation of the methamphetamine laboratory involved her constructive possession of the firearms. That is, a rational trier of fact could infer from the evidence that defendant knowingly had the power and the intention to exercise dominion or control over the firearms, thus satisfying the constructive possession element. In addition, the evidence, when viewed as a whole, including the close proximity between defendant's constructive possession of the firearms and her operation of the methamphetamine laboratory, and the well-known relationship between drugs and the use of firearms as protection, a rational trier of fact could also infer that defendant's operation of the laboratory involved defendant's constructive possession of the firearms. See *People v Rapley*, 483 Mich 1131 (2009). Contrary to the dissent's suggestion, there is absolutely nothing wrong with "conviction[s] built on inferences derived from circumstantial evidence . . . ." *People v Hardiman*, 466 Mich 417, 430 (2002). Indeed, it is important for appellate courts to remember that "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* at 428. For these reasons, we AFFIRM the Court of Appeals' holding that "there was sufficient evidence to permit a rational jury to conclude that defendant was guilty of operating or maintaining a methamphetamine laboratory involving a firearm." *People v LaFountain*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2012 (Docket No. 306858), pp 2-3. However, we VACATE that part of the Court of Appeals opinion holding that the trial court did not err by assessing 10 points for Prior Record Variable (PRV) 7, MCL 777.57. It was unnecessary for the Court of Appeals to address this issue because defendant waived it by requesting the trial court to assess 10 points for PRV 7. *People v Jones*, 468 Mich 345, 352 n 6 (2003) ("Appellate review is precluded because when a party invites the error, he waives his right to seek appellate review, and any error is extinguished."), citing *People v Carter*, 462 Mich 206, 214-215 (2000).

VIVIANO, J. (*dissenting*).

In this case, defendant was convicted of operating a methamphetamine laboratory "involv[ing] the possession, placement, or use" of a firearm.[1] Defendant claims that there was insufficient evidence that the operation of her methamphetamine laboratory involved firearms. The majority rejects this argument and affirms defendant's conviction. Respectfully, I believe this is error.

---

[1] MCL 333.7401c(2)(e). This offense is punishable by a maximum prison term of 50 years for a second or subsequent offense. MCL 333.7413(2). Defendant was also convicted of operating her laboratory in the presence of a minor and operating a lab involving the generation of hazardous materials, each of which carries a maximum sentence of 40 years for second or subsequent offense. MCL 333.7401c(2)(b) and (c); MCL 333.7413(2). The trial court vacated the latter convictions pursuant to an agreement between defendant and the prosecution that only her most serious operation conviction would stand.

I believe that neither the majority nor the Court of Appeals interprets the word "involves" in a way that is consistent with its ordinary meaning. Doing so, I would conclude that there was insufficient evidence that the firearms were involved in the operation of the methamphetamine laboratory.

## I. THE MEANING OF "INVOLVES"

MCL 333.7401c(2)(e) applies when a drug-manufacturing violation for owning or using a laboratory also "*involves* the possession, placement, or use of a firearm or any other device designed or intended to be used to injure another person . . . ."[2] "When construing a statute, [a] court must presume that every word has some meaning and should avoid any construction that would render any part of the statute surplusage or nugatory."[3] The Legislature did not define "involves" as it is used in this statute. Presumably, then, the Legislature intended for this Court to give the word its plain meaning,[4] in accord with the word's "context or setting."[5] "Involve" has many different meanings.[6] *The Merriam-Webster Dictionary* lists seven definitions,[7] and defendant, the Court of Appeals, the majority, and the prosecution all interpret this word differently.

[2] Emphasis added.

[3] *People v Borchard-Ruhland*, 460 Mich 278, 285 (1999).

[4] *People v Morey*, 461 Mich 325, 330 (1999).

[5] *People v Tennyson*, 487 Mich 730, 737 (2010).

[6] The Oxford English Dictionary (2d ed) has almost an entire page of text devoted to this word. *The Random House Dictionary of the English Language: Second Unabridged Edition*, lists 15 different definitions:

> **1.** to include as a necessary circumstance, condition, or consequence; imply entail . . . . **2.** to engage or employ. **3.** to affect, as something within the scope of operation. **4.** to include, contain, or comprehend within itself or its scope. **5.** to bring into an intricate or complicated form or condition. **6.** to bring into difficulties (usually [followed] by *with*) . . . . **7.** to cause to be troublesomely associated or concerned, as in something embarrassing or unfavorable . . . [.] **8.** to combine inextricably (usually [followed] by *with*). **9.** to implicate, as in guilt or crime, or in any matter or affair. **10.** to engage the interests or emotions or commitment of . . . . **11.** to preoccupy or absorb fully (usually used passively or reflexively) . . . . **12.** to envelope or enfold, as if with a wrapping. **13.** to swallow up, engulf, or overwhelm. **14. a.** *Archaic*. to roll, surround, or shroud, as in a wrapping. **b.** to roll up on itself; wind spirally; coil; wreathe.

[7] *The Merriam-Webster Dictionary* (2005). Defendant's preferred definition is listed in the online version of Merriam-Webster, but not in the print edition. Merriam-Webster,

Defendant claims that "involve" means "to require as a necessary accompaniment."[8] Under this definition, drug-manufacturing activity would involve the possession, placement, or use of a firearm if a defendant required a firearm to conduct his or her criminal activity as a necessary accompaniment. This cannot be the definition that the Legislature intended because the base offense that defendant was convicted of does not require that firearms be involved in any way.[9] Instead, firearm involvement is an aggravating factor that raises the maximum sentence upon conviction. Hence, the Legislature has determined that it is possible to violate MCL 333.7401c both with and without firearm involvement, and in this sense, firearms are not *necessary* for the illegal manufacture of controlled substances. Therefore, "involves" cannot mean "to require as a necessary accompaniment," as defendant claims.

The Court of Appeals did not expressly state the meaning that it attributed to the word "involve." However, it appears that the Court of Appeals treated this word as if it described spatial proximity. The Court explained:

> There is no question that a methamphetamine lab was being operated inside the house, nor is there any question that firearms were inside the house. Therefore, there was sufficient evidence to permit a rational jury to conclude that defendant was guilty of operating or maintaining a methamphetamine laboratory involving a firearm.[10]

Thus, the Court of Appeals seemed to believe that this crime involved the possession, placement, or use of a firearm because a firearm was in the same building where the crime was committed. Similarly, the majority in this Court states that given

> the close proximity between defendant's constructive possession of the firearms and her operation of the methamphetamine laboratory, and the well-known relationship between drugs and the use of firearms as protection, a rational trier of fact could also infer that defendant's operation of the laboratory involved defendant's constructive possession of the firearms.

---

<http://www.merriam-webster.com/dictionary/involve> (accessed March 11, 2014). The prosecution did not address the argument concerning the word "involves" in its brief, but did address the argument and provide its own proposed definition at oral argument.

[8] *Id*.

[9] See MCL 333.7401c(1)(a) through (c).

[10] *People v LaFountain*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2012 (Docket No. 306858), pp 2-3.

In keeping with its proximity rationale, the majority believes that a different dictionary definition is more fitting, namely, "to include within itself or its scope."

The problem with the Court of Appeals' interpretation is that the dictionary does not list "spatial proximity" or "location within the same building" as possible definitions for "involve." Hence, the plain meaning of the word cannot be the meaning that the Court of Appeals ascribed to it. To the extent that the majority's preferred definition suggests that "involves" could describe a spatial relationship, the Legislature clearly knew how to use simpler terms to describe mere presence or proximity: the very same statute prohibits using an area to manufacture controlled substances "*in the presence* of a minor"[11] and doing so "*within 500 feet* of a residence, business establishment, school property, or church or other house of worship."[12] In the light of this textual evidence, I do not believe the Legislature intended for the word "involves" to refer to spatial proximity or to mean "include within itself or its scope." Therefore, I am convinced that the interpretation of the Court of Appeals and the majority does not give effect to the intent of the Legislature.

At oral argument, the assistant attorney general representing the prosecution proposed a third definition of "involves," stating that "firearms are involved with a lab if they're part of the lab—if they have a connection—a minimal connection." I cannot find a dictionary that defines "involve" as "having a minimal connection," but *The Merriam-Webster Dictionary* does say that "involve" can mean "to relate closely : connect[.]"[13] Under this definition, a drug-manufacturing offense would involve firearms if there was a close connection or relationship between firearms and the drug manufacturing activity.

Unlike the alternatives previously discussed, this latter definition gives effect to every word in the applicable statutory provision, accords with the ordinary meaning of "involves," and is consistent with the language in the rest of the statute. The word "involves" describes a relationship that must exist *between firearms and drug activity*—a close relationship or connection. The words "possession, placement, or use" then describe the prohibited relationship *between the defendant and the firearms*. Because this definition gives all the words in the statute an independent meaning, it should govern this Court's analysis in this case.[14]

---

[11] MCL 333.7401c(2)(b) (emphasis added).

[12] MCL 333.7401c(2)(d) (emphasis added).

[13] *The Merriam-Webster Dictionary* (2005).

[14] It is also worth noting that the Legislature knows how to penalize simple possession of a firearm during the commission of an offense without requiring a connection between the firearm and the criminal activity: Michigan's felony-firearm statute states that a person commits a felony if he or she "carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . ." MCL 750.227b(1); see

## II.  SUFFICIENCY-OF-THE-EVIDENCE ANALYSIS

For evidence to be sufficient to sustain a conviction, it must not merely provide some basis for a jury to conclude that a defendant is guilty; the evidence must provide a basis on which a rational jury could conclude that a defendant is guilty *beyond a reasonable doubt*.[15]  As this Court has explained before, "the fact that a piece of evidence has some tendency to make the existence of a fact more probable, or less probable, does not necessarily mean that the evidence would justify a reasonable juror in reasonably concluding the existence of that fact beyond a reasonable doubt."[16]  Thus, even though we must view the evidence in the light most favorable to the prosecution when reviewing a sufficiency-of-the-evidence challenge,[17] we must still hold the prosecution accountable to the standard of proof that applied at trial.

The prosecutor did not introduce any evidence that defendant had actually possessed the firearms or discussed them with her accomplice.  Instead, the prosecutor asked the jury to believe that defendant possessed the guns in the office while she was manufacturing methamphetamine in her bedroom because she had been in the office before.  The theory was that because defendant had come so near to the weapons, she must have known about them; and because she knew about them, she must have realized that they could be useful to her; and because she realized that they could be useful to her, she must have intended to control them; and because she intended to control them, she constructively possessed them; and because she constructively possessed them, they were involved in her drug activity.  While as the majority notes, there is nothing wrong with convictions built on inferences derived from circumstantial evidence, the string of inferences required to sustain the verdict in this case is too attenuated to merit confidence.  On the evidence presented, any rational jury would have had at least "a fair, honest doubt growing out of the evidence or lack of evidence," that is, "a doubt based on

---

also *People v Elowe*, 85 Mich App 744, 747 (1978) (holding that the felony-firearm statute does not require a nexus between the firearm and the criminal activity).  In contrast, the statute at issue here only applies when the underlying violation "involves" the possession, placement, or use of a firearm.

[15] *Jackson v Virginia*, 443 US 307, 316 (1979) (stating that an "essential" component "of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense").  Thus, a sufficiency-of-the-evidence challenge is a constitutional claim grounded in the Due Process Clause of the Fourteenth Amendment.

[16] *People v Hampton*, 407 Mich 354, 368 (1979).

[17] *People v Nowack*, 462 Mich 392, 399 (2000).

reason and common sense,"[18] regarding whether the firearms were involved in the drug activity. This is especially true in view of the countervailing evidence that defendant did not own the weapons, that she did not exclusively control access to the room where they were kept, that someone else put the weapons there, that the weapons were put there some time before defendant began her criminal activity, and that the weapons were not loaded. Far from showing a close relationship, the evidence actually suggested that the location of the firearms was *incidental* to the drug-manufacturing activity, not closely connected to it.

As the majority notes, defendant might have been able to use the firearms in the event that someone tried to steal her drugs. But demonstrating *potential utility*, without more, is not enough to prove that there was an *actual, close relationship*. "Closely related" cannot mean "potentially useful." There were many other items in the house that could have been potentially useful to defendant's criminal activity, but we would not say that these items were involved in the crime. Would we say, for example, that knives in the kitchen were involved in the offense because they too could have been used to ward off intruders? Without evidence that defendant ever armed herself with a dangerous weapon, or that she arranged for one to be close at hand, or that she chose the location of her crime in part because of its proximity to weapons, the relationship between the firearms and the drug activity was so attenuated that it could not provide a basis for a rational jury to conclude *beyond a reasonable doubt* that there was a close relationship between the weapons and the drug manufacturing. Consequently, if "involves" means "closely related or connected to," there was not sufficient evidence that firearms were involved here.

The majority's preferred definition places emphasis on the scope or boundaries of defendant's methamphetamine operation, but even under this definition, there was scant evidence of involvement of a firearm. There was no evidence at trial that the methamphetamine production took place in the same room as the firearms. In fact, defendant's son called the authorities only after his mother called him into her own bedroom and he witnessed the drug activity occurring inside that room, not the room across the hall. The firearms were not included in the scope of the laboratory and, therefore, were not involved in the laboratory even under this definition.

The majority still believes that the weapons were involved in defendant's crime on the theory that defendant constructively possessed the firearms that were outside her lab while she herself was inside the lab. In doing so, "[t]he Court does not appear to grasp the distinction between how a word *can be* used and how it *ordinarily is* used."[19] If someone were to ask me, Was a computer *involved* in the writing of your dissenting

---

[18] CJI2d 3.2(3).

[19] *Smith v United States*, 508 US 223, 242 (1993) (Scalia, J. dissenting).

statement? that person would not be asking if there was a computer in a room across the hall while I wrote out my statement with a pen in another room. Similarly, when the Legislature increased the maximum punishment for a violation that *involves* a firearm, I highly doubt that it had in mind a case in which a drug user produced methamphetamine in her bedroom while there were unloaded rifles behind the door in someone else's room across the hall. If it did, it certainly chose a strange word to communicate its intent.

### III. CONCLUSION

I believe the jury's conclusion that the firearms were involved in the drug activity simply because they were nearby and could have been useful was, at best, *speculation*. Speculation, even based on the reasonable observation that defendant could have used the firearms for defense, is not sufficient to sustain a criminal conviction. For the due process right described in *Jackson v Virginia*[20] to be meaningful, there must be some point above which the evidence presented at a trial must rise in order to justify rational inferences of guilt beyond a reasonable doubt.[21] I believe the evidence failed to reach that constitutional threshold in this case.

---

[20] *Jackson*, 443 US at 316.

[21] To be clear, I do not believe that this Court should resurrect the "no inferences upon inferences" rule that it wisely rejected in *People v Hardiman*, 466 Mich 417 (2002). In that case, we relied heavily on the analysis provided by Professor John Henry Wigmore, and as noted in Wigmore's treatise, the proper question concerning the sufficiency of evidence "is always whether, in view of all patterns of corroborating and contradicting evidence at all levels of all inferential chains, the final [fact to be proved] has been shown to the degree of likelihood required by the applicable standard of persuasion, whatever that may be." 1A Wigmore, Evidence (Tillers rev), § 41, p 1138. In a criminal trial, in which the standard of persuasion is proof beyond a reasonable doubt and an individual's liberty is usually at stake, it is of the utmost importance that reviewing courts enforce the rule that "[j]uries are not permitted to convict a defendant based on speculation or mere suspicion." *United States v Michel*, 446 F3d 1122, 1127 (CA 10, 2006).

Because I believe that in view of the ordinary meaning of the word "involve," there was insufficient evidence that defendant's drug operation involved the possession, placement, or use of a firearm, I would reverse the judgment of the Court of Appeals and vacate defendant's conviction for violating MCL 333.7401c(2)(e).[22] Pursuant to defendant's agreement with the prosecution, I would remand this case to the trial court for reinstatement of one of defendant's previously vacated convictions.

CAVANAGH and MCCORMACK, JJ., join the statement of VIVIANO, J.

---

[22] Defendant's alternative claims of error would be moot under my disposition.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 28, 2014



Clerk

t0319