*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MARCUS BARHAM,

       Defendant-Appellant.

UNPUBLISHED
February 19, 2019

No. 340196
Wayne Circuit Court
LC No. 17-002250-01-FC

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

A jury acquitted defendant of assault with intent to murder, but convicted him of assault with intent to do great bodily harm, carrying a concealed weapon, felon in possession of a firearm (felon-in-possession), and possession of a firearm during the commission of a felony (felony-firearm). Defendant contends that the prosecutor failed to sufficiently refute his claim of self-defense and made improper statements during closing argument. He further challenges the trial court's jury instruction on a defendant's duty to retreat. We affirm.

## I. BACKGROUND

Defendant shot his boss, Johnie Towns, in the face during a worksite altercation. Defendant was supposed to be hanging drywall in a second-story bedroom but instead loitered on the house's porch. Towns became irritated and told defendant's coworkers, Phil Boble and Derek Thomas, that he would not allow defendant to work the next day. Defendant testified that he and Towns then crossed paths in the house. Towns is much larger than defendant (but also much older), and defendant asserted that Towns "was clenching [a] box cutter." The men argued and parted ways.

Defendant, Boble, and Thomas testified that defendant left the house and went outside to the garage. Boble and Thomas heard Towns speaking to himself, colorfully threatening to attack defendant. Towns, on the other hand, claimed that he left first and that defendant followed him downstairs. Whoever left first, all agreed that defendant and Towns continued their argument in the garage. At some point, Towns walked to his truck to retrieve his cell phone to call his

brother, who was in charge of the business. When he returned to the garage, defendant rushed him.

Defendant described that Towns "got in [his] face" and made further threatening statements. When Towns returned from his truck, he carried a "shiny" object that looked like a blade. Fearing for his safety, defendant claimed that he pulled his gun from his pocket. Towns continued to approach him and so defendant fired a shot in Towns's direction. The bullet struck Towns in the face.

Despite being shot, Towns tackled defendant and the men wrestled on the floor. Towns asserted that the men grappled for defendant's gun. Defendant contended that Towns was attempting to stab him with a box cutter. Thomas and Boble came into the garage. They saw Towns holding a box cutter with the blade extended; they did not see a gun. Defendant fled the scene before Towns's brother arrived to take him to the hospital.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence to support his convictions for assault, felon-in-possession, and felony-firearm because it failed to disprove his claim that he acted in self-defense.[1] Defendant centers his challenge, however, on his claim that Towns was not a credible witness as defendant's witnesses, Boble and Thomas, corroborated his version of events, rather than Towns's.

We review de novo challenges to the sufficiency of the evidence, "[t]aking the evidence in the light most favorable to the prosecution" to determine "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). We must defer to the fact finder's assessment of witness credibility in making our review. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

"Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted). MCL 780.972(1) governs self-defense as follows:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .

---

[1] Defendant did not argue self-defense was a defense to carrying a concealed weapon.

-2-

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Towns testified that defendant shot him in the face after an argument. Immediately before the shooting, defendant "walked into [Towns]," and Towns "pushed [defendant] off." While Towns did testify somewhat inconsistently about the precise moment he retrieved a box cutter from his sweatshirt pocket, Towns unequivocally testified that the he did not pull out the box cutter until after defendant shot him. Only defendant testified that Towns attacked him with a box cutter before defendant shot Towns. Thomas and Boble were not present when the shooting occurred, and their testimony that Towns was the original aggressor was limited to overhearing Towns threaten defendant before the shooting. Thomas overheard Towns angrily say, "[defendant] don't [sic] know who the f*** he talkin' to, and he'll f*** [defendant] up." And Boble overheard Towns threaten to "f*** that little mother f***** up."

Ultimately, both the defense and the prosecution presented evidence to support their theories on who was the initial aggressor and whether defendant had to the right to resort to force. The jury credited Towns's testimony and we may not interfere with that assessment. Accordingly, we have no ground to reverse defendant's convictions.

## III. IMPROPER CLOSING ARGUMENTS

Defendant further contends that the prosecutor made improper statements during closing argument, denying him a fair trial. Defendant failed to preserve his challenges with timely objections and our review is limited to plain error affecting defendant's substantial rights. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2000). In the alternative, defendant contends that his counsel was constitutionally ineffective as he failed to object. Defendant sought a *Ginther*[2] hearing from this Court, but his motion was denied. *People v Barham*, unpublished order of the Court of Appeals, entered May 17, 2018 (Docket No. 340196). As we agree that a remand is unnecessary, defendant's challenge in this regard is limited to errors apparent on the existing record. *People v Horn*, 279 Mich App 31, 37-38; 755 NW2d 212 (2008).

Defendant contends that the prosecutor twice implied that she had additional information upon which the jury could rely. First, the prosecutor argued that defendant's testimony was not credible because he did not tell his family members certain details about the assault. The prosecutor reminded the jury that she played a recorded jailhouse telephone call between defendant and his mother. During that conversation, defendant told his mother that Towns had a box cutter inside the house and that Towns's "veins were popping out of his head" while he yelled at defendant. However, during the recording, defendant did not tell his mother that Towns retrieved a box cutter from his truck or that Towns attempted to slice his throat. On appeal, defendant argues that the prosecutor presented only three minutes of one conversation, omitting

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the other 26 minutes of that call and all other calls defendant made from jail, exaggerating her implication that defendant was untruthful.

Second, defendant challenges the prosecutor's argument in rebuttal that defendant expected the jury "to believe . . . that after [67] years Mr. Towns just lost his dang mind" and decided "to get a box cutter, wildly attack [defendant] and slice his throat." This was improper, defendant contends, because defendant never claimed that Towns lost his mind and presented no argument or evidence impugning Towns's mental health. The prosecutor thereby improperly implied that she knew and understood Towns' character, beyond that shown at trial.

These arguments are more correctly characterized as the prosecutor disparaging defendant's credibility and bolstering that of the victim. It is improper for the prosecutor to vouch for the credibility of her witnesses or to imply special knowledge about a witness's veracity. *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010). However, we must consider the prosecutor's statements in context after reviewing the parties' arguments as a whole. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016).

The prosecutor did not improperly imply that defendant's testimony was incredible. The prosecutor selected a portion of defendant's recorded jailhouse conversations to play for the jury. During that conversation, defendant gave his mother information that was inconsistent with his trial testimony. The prosecutor cross-examined defendant about those inconsistencies. The prosecutor could therefore refer to those inconsistencies in her closing argument.

And the prosecutor did not improperly vouch for Towns's veracity. The prosecutor did not suggest that she had secret knowledge about Towns's mental health. Rather, the prosecutor relied on a colloquialism—"lost his dang mind"—to discredit defendant's self-defense theory. This interpretation is supported by the prosecutor's next sentence, inquiring, "Does that make common sense and reasonableness [sic] or is it more likely, makes more common sense, that [Towns] went to go get his phone" to call his business partner about his employee's poor behavior.

As the prosecutor did not make improper arguments, counsel had no ground to object and cannot be deemed ineffective for failing to do so. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). And we have no ground to grant defendant relief.

## IV. INCORRECT JURY INSTRUCTION

Defendant finally contends that the trial court incorrectly instructed the jury that he "had a duty to retreat from the sudden, violent attack," and that defense counsel was ineffective for failing to object. However, defendant mischaracterizes the court's instruction. The court's instruction on self-defense spanned more than three pages of the transcript. In relation to a person's duty to retreat, the court stated:

A person can use deadly force in self-defense only where it is necessary to do so. If the Defendant could have safely retreated, but did not do so you may consider that fact in deciding whether the Defendant honestly and reasonably believed he needed to use deadly force in self-defense.

However, a person is *never required to retreat* if attacked in his own home nor if a person reasonably believes that an attacker is about to use a deadly weapon, nor *if a person is subject to a sudden fierce and violent attack.* Further, a person is not required to retreat if the person, A, has not or is not engaged in the commission of a crime at the time the deadly is used and, B, has a legal right to be where a person is at that time and, C, has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent death . . . or great bodily harm of the person of another.

. . . An individual who is not or is not engaged in the commission of the crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies; the individual honestly and reasonably believes that the deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [Emphasis added.]

The court's instruction is exactly opposite of defendant's description on appeal. Accordingly, his claim completely lacks merit.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica