*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARIO DEANGELO AMISON,

Defendant-Appellant.

UNPUBLISHED
February 21, 2019

No. 337349
Wayne Circuit Court
LC No. 16-009059-02-FC

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a weapon in a vehicle, MCL 750.227(2), and possessing a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b(1). Defendant was sentenced to five years for the felony-firearm conviction and one to five years for the felon-in-possession and carrying convictions. Defendant appeals his convictions as of right, and we affirm.

## I. BASIC FACTS

Defendant's charges arise out of an incident that occurred outside a bar in Dearborn, Michigan. At some point, a single gunshot was fired, followed by a brief altercation that ended with the firing of several additional shots. Allante Percy admitted to the shootings and pleaded guilty to charges arising out of those shootings. As Percy fled the scene in a car, defendant entered the car on its passenger side. A high-speed chase ensued along Michigan Avenue in Dearborn, in which speeds of over 100 mph were noted, ending when police disabled the vehicle. Defendant complied with officers and was immediately arrested. No weapons were found on Percy, on defendant, or in the vehicle. No one present in any of the pursuing vehicles observed a weapon being thrown from the vehicle. However, after retracing the path of the chase, a .44 caliber revolver was discovered lying in the middle of the road. Officers also discovered that a surveillance camera on a nearby building had been pointed at the location where the gun was found. A video recording was retrieved and was presented as the prosecution's primary evidence at trial.

The video is not clear in all details, but it does show the following while looking along Michigan Avenue: a building on the left side of the screen, a double-sidewalk adjacent to the building, and five lanes of Michigan Avenue adjacent to the sidewalk.[1] Percy's car later appears, travelling toward the camera at a high rate of speed in the lane next to the left-turn lane. And as Percy's car passes through the scene, a small dark object appears and strikes the building and rebounds back into the street. The object appears to land and come to a stop in the westbound lane in which Percy had been travelling. As such, all told, the gun covered a distance in excess of the combined widths of four lanes of traffic (from being thrown from the second lane, it travelled over the first lane and the double sidewalk, then rebounding off the building, it again travelled back across the sidewalk and the first lane before coming to a rest).

The officer in charge, Sergeant Brian Kapanowski, testified that based on his impression of the video, only defendant, who was seated in the passenger seat, could have thrown the revolver from the vehicle. Specifically, he testified that the video showed the revolver flying across roughly "a lane and a half of travel plus three[2] sidewalks," and striking "the wall higher than the car would have been." He further testified that in his opinion, "for a driver to do that at 110 miles per hour would be pretty impressive and I don't see that happening."

In contrast, Percy testified that he retained exclusive possession of the firearm until he threw it out of the passenger window. Percy testified that while he was driving, he held the gun in his hand. Percy claimed that, at some point while being pursued by the police, he "rolled" down the passenger-side window, where defendant was seated and "leaned over and threw [the gun] out." Percy also described his action as having "slung" or "tossed" the gun out the window. When asked on two separate occasions why he chose to throw the gun through the passenger window instead of simply throwing it from his driver-side window, Percy gave non-responsive answers each time. Percy also stated that he was driving in the lane closest to the building at the time.

And defendant testified that he never possessed a gun that night. In addition, despite Percy's testimony that he carried the gun in his hand while driving and later "slung" the gun across defendant's body and out the passenger window, defendant claimed that he never saw a gun that night. Defendant offered the explanation that he did not see Percy throw the gun out the window because defendant had been "focused on" and "looking back" at the police who were in pursuit.

---

[1] Specifically, starting from the left side of the screen, the video depicts (1) a building, (2) a double-wide sidewalk (which is approximately the width of a traffic lane), (3) a westbound traffic lane (which was slightly wider than a normal lane, presumably to account for drains and drainage on the street), (4) a westbound normal traffic lane, (5) a left-turn lane, and (6) the other two eastbound lanes. Percy's car drove through (4), the westbound traffic lane farthest from the building.

[2] As already noted, the sidewalk in question was a double sidewalk.

As a threshold matter, the trial court specifically determined that both Percy and defendant were not credible. Regarding the video evidence, the court found that the gun

> was thrown from the car, and it hit the . . . building at a point higher than the height of the car itself, and it struck the building and then bounced back off a couple flags of sidewalks back onto Michigan Avenue and landed pretty much right almost in the center of Michigan Avenue so sort of in the second lane westbound but almost in the center lane.

Dispositively, the trial court determined that defendant had taken the gun from Percy and threw it out the passenger window, which constituted defendant having possessed the gun. The court acknowledged that its finding was based on circumstantial evidence, which was premised on the way the gun was shown in the video to have hit the building and bounced back into the road. Having made this factual finding, the trial court found defendant guilty of all three offenses.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred by finding sufficient evidence that the possession element of these convictions was proven beyond a reasonable doubt. We disagree.

When reviewing a challenge of the sufficiency of the evidence in a bench trial, this Court must view the evidence "in the light most favorable to the prosecution to determine whether there is sufficient evidence to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000). An appellate court must follow a deferential standard of review by drawing all reasonable inferences and credibility choices in support of the findings made by the trier of fact. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "The scope of review is the same whether the evidence is direct or circumstantial." *Id*. The elements of a crime may be satisfied by circumstantial evidence as well as any reasonable inferences that arise from that evidence. *Id*. Also, a trial court's findings of fact are reviewed for clear error, giving regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). A factual finding is clearly erroneous if, after review of the entire record, an appellate court is left with a definite and firm conviction that an error occurred. *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014).[3]

---

[3] The dissent asserts that findings by "a lone judge in a bench trial" are not to be accorded the same deference as is due a jury's findings. But those bench findings are still reviewed under the highly deferential clear-error standard. MCR 2.613(C). In any event, our Supreme Court has held that, in determining whether there was sufficient evidence to support a guilty verdict, a jury's verdict and a judge's verdict following a bench trial are reviewed under the same standard. *People v Petrella*, 424 Mich 221, 269-270; 380 NW2d 11 (1985). That standard is the familiar one of *Jackson v Virginia*, 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979), which

Defendant challenges his convictions because he claims that there is insufficient evidence to show that he possessed a firearm, or more specifically, that it was he who threw the firearm out of the vehicle, which presupposes that he possessed it in order to throw it.[4]

Although there is no direct evidence of possession here, circumstantial evidence and the reasonable inferences that arise from it can constitute satisfactory proof of possession. *People v Brown*, 279 Mich App 116, 136-137; 755 NW2d 664 (2008). In fact, inferences built upon circumstantial evidence are often *more* satisfactory than direct evidence. *People v Wolfe*, 440 Mich 508, 526; 489 NW2d 748 (1992) amended 441 Mich 1201 (1992). Moreover, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) To that extent, so long as each inference is independently supported by established fact, any number of inferences may be combined to decide the ultimate question. *Id*.

Here, the video shows that an object struck the cleaners building at the time Percy's car drove by it after 2:00 in the morning. Police later found a handgun at the precise spot where the object in the video is seen, leading to the logical inference that the object in the video was the handgun. Thus, the trial court's finding that a gun was thrown from Percy's car is supported by the evidence and is not clearly erroneous.[5]

---

requires a reviewing court to view that evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

[4] Possession of a firearm is a common element of each of the crimes of which defendant was convicted: felon-in-possession, carrying a pistol in a vehicle, and felony-firearm. See *People v Bass*, 317 Mich App 241, 267-269; 893 NW2d 140 (2016); *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999). On appeal, possession is the only disputed element as to each of the charges, as defendant stipulated that he is a convicted felon (Count One). He also does not dispute that there was sufficient evidence to show that the firearm was carried by someone in the vehicle, either himself or Percy (Count Two), and that there was sufficient evidence to show that the firearm was possessed by someone in the vehicle, again, either himself or Percy, during the commission of another felony. Therefore, if the evidence is insufficient as to the possession element, none of defendant's convictions can stand, but if the possession element was met then each conviction is valid. Thus, our analysis of who threw the gun from the car is dispositive of the possession element for all three charges and need not be separately analyzed.

[5] We note that the video frames reproduced by the dissent give a poor representation of the information the video actually conveys. When viewed in isolation, the frames are admittedly not very enlightening. However, when the frames are viewed as they were intended to be viewed— as part of a moving picture or video—it is much easier to see the slight changes in pixilation. Regardless, even the dissent acknowledges that the video is sufficient to allow a fact-finder to conclude that the gun found by police in the middle of Michigan Avenue was thrown by an occupant of Percy's car. Independent evidence demonstrated that only Percy and defendant were

-4-

In finding that defendant was the person who threw the gun from the car, the trial court made other factual findings and inferences based on those findings. As we have already mentioned, this layering of inferences is allowable, as long as each layer is supported by the evidence. *Id.* First, the trial court found that the gun, after it was thrown from the car, hit the building at an elevation that was higher than the height of the car. We have reviewed the video, and the trial court did not clearly err. While height and depth perception can be a bit challenging to gauge on a two-dimensional video, we are not left with a definite and firm conviction that the trial court made a mistake. One interpretation of the video does appear to show the gun striking the wall at a considerable height (i.e., higher than the height of the passing car). Second, the trial court found that, after striking the building, the gun bounced back into the road, landing somewhere in the same lane that Percy had just traversed. Again, nothing in the video contradicts this finding; rather, the testimony of the officer who later found the handgun near that lane fully supports it. Accordingly, the trial court's finding related to where the gun ended up after hitting the wall is not clearly erroneous.

Based on the circumstances surrounding the path the gun took after being thrown from Percy's car, combined with its finding that Percy and defendant were not credible, the trial court concluded that the gun had been thrown by defendant, meaning that he necessarily first possessed it. This finding is not clearly erroneous and is supported by the record. This Court may not interfere with a trial court's credibility determinations, *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008); *Wolfe*, 440 Mich at 514-515; *People v Passage*, 277 Mich App 175, 177; 743 NW2d 746 (2007), which in this case involved its express findings that Percy and defendant were not credible. Thus, the fact that Percy claimed that he tossed the gun out the passenger window and that defendant denied ever possessing or even seeing the gun is of no import under our sufficiency analysis.

Additionally, the court inferred that because of how the gun travelled after having been thrown from the car, i.e., across lanes of the road, across the sidewalks, and back into the road, the thrower had to have been seated on the passenger side, meaning that it was defendant who threw the gun. This finding is a reasonable inference from the record evidence. Because the gun struck so high on the building wall, it would have been nearly a physical impossibility for someone seated in the driver's seat to have thrown the gun. In other words, it would be impossible from a common-sense perspective[6] for someone to "toss" or "fling" a gun while "leaning over" in a speeding vehicle at a speed and angle from which it would have been able to hit the building where it did. Although there was no record evidence of how many feet the car

---

in the car, that Percy was driving, and that defendant was in the passenger seat. All of the trial court's inferences, which are based on the video, originate with those indisputable facts and thus constitute permissible inferences based on established facts. *Hardiman*, 466 Mich at 428.

[6] The dissent takes issue with our reliance on common sense. But being seated in a driver's seat in a car is undoubtedly an everyday, common experience. Thus, no expert testimony was required to impart to the fact-finder the constraints associated with being seated in the driver's seat of a car and the spatial relationships existing between someone seated in that seat, a passenger, and the passenger window. See MRE 702.

was away from the building at the time the gun was thrown, the video shows that the car was over two lane widths away, which corresponds to approximately 24 feet.[7] Because the driver would have to have either leaned across defendant, who was seated in the passenger seat, or thrown the gun around defendant and through the open passenger window, he necessarily would have been limited in the extent of the angle at which he could have thrown the gun. Common sense again dictates that someone who threw an object from the driver's seat through the passenger window would have to have thrown it fairly close to a horizontal angle to get it through the window opening, yet the gun hit the wall at height above the roof of the car. Further, the gun ultimately was found in the same lane that Percy had driven through, so the gun not only covered the 24 or so feet to the building, but it also had enough residual speed or energy to travel an additional 24 or so feet after rebounding off the wall.[8] Thus, it is reasonable to infer that the gun was thrown with a high amount of force toward the building.

With this understanding, it seems nigh impossible for someone seated in a driver's seat to have merely "tossed" a gun through the passenger window,[9] such that the gun had enough force

---

[7] Michigan's Road Design Manual calls for lane widths anywhere from 10 to 12 feet. See <https://mdotcf.state.mi.us/public/design/files/englishroadmanual/erdm03.pdf> (accessed January 15, 2018).

[8] The dissent avers that we do not appreciate the fact that the car was travelling at a high rate of speed, which would have imparted a significant amount of speed or energy to the thrown gun itself. While the speeding car undoubtedly contributed to the overall speed of the gun, that contribution would have only been *in the direction the car was travelling*, which was parallel to the face of the building. In other words, the car contributed nothing to the gun's speed going *toward* the building. As an illustration, if an object is merely "dropped" from a speeding vehicle going 200 mph, we know that the object is not going to "shoot out" away from the vehicle; instead, it will essentially drop straight down (relative to the car), but it will land a considerable distance further along the road due to the speed of the vehicle (but still next to the car).

[9] Interestingly, the dissent apparently comes to the same conclusion that the trial court and we did—that it would have been physically impossible for Percy to have thrown the gun out the passenger window. Instead, the dissent introduces a third possibility: that Percy could have thrown the gun out the driver window, but over the top of the car (akin to a hook shot in basketball). But because Percy testified that he threw the gun out the passenger window, this "hook shot" theory can hold no weight. That is because if Percy had done what the dissent theorizes as possible, then there would have been no reason for Percy to concoct a story that he threw it out the passenger window. Clearly, to the extent this theoretical possibility could have introduced "doubt" into a potential fact-finder's mind, such doubt would not have been *reasonable* in light of Percy's inconsistent "admission." Again, there is no reason for Percy to have lied about how he threw the gun if he indeed had thrown it out his own window.

More importantly, for our purposes, Officer Kapanowski raised the "hook shot" as a *theoretical* possibility in his testimony (before Percy had testified), but he also opined that such a possibility was not realistic. Further, such an alternate theory is not reasonable since it was not even relied on or asserted by defendant at trial, notwithstanding Officer Kapanowski raising it as

or speed behind it to travel over 24 feet to the building plus another 24 or so feet after striking the building. Additionally, because of the size and shape of the passenger window which the driver would have to have thrown the gun through, it seems a virtual impossibility that he could have thrown the gun at an angle to have accomplished what is seen in the video, i.e., the gun hitting on the wall above the height of the car. Conversely, someone seated in the passenger seat would have a much easier time accomplishing what was seen in the video. Someone in the passenger seat could have extended an arm *outside* the widow, which would have allowed a fuller range of motion to throw. This fuller range of motion would have allowed for a stronger throw and a higher trajectory. Therefore, although based on circumstantial evidence and inferential steps, the trial court's finding that defendant, who was seated in the passenger seat, was the one to have thrown the gun is supported by the evidence and is not clearly erroneous.

In addition, the video shows the car traveling on a straight line during the sequence where the gun was thrown, despite traveling at more than 100 miles per hour. Although not by itself dispositive, it is highly unlikely that someone driving at that speed could lean across the car and fling the gun through the passenger window, as Percy described, without swerving or veering at all. At a minimum, the lack of swerving or veering reinforces our conclusion that the trial court was not clearly erroneous in finding that it was not the driver who threw the gun.

In sum, contrary to the dissent's assertion, the trial court was not "left with pure guesswork" to conclude that defendant possessed and threw the gun that night. Simply put, the evidence, while circumstantial, was sufficient to allow a fact-finder to find beyond any *reasonable* doubt who threw the gun that night—it was defendant, who was seated in the passenger seat of the speeding vehicle. "To repeat and emphasize[,] the issue presented on appellate review of claims of insufficiency is distinct from the role of the factfinder . . . ." *Wolfe*, 440 Mich at 532 n 4 (Boyle, J., concurring in part and dissenting in part). Accordingly, defendant's claim that there was insufficient evidence to support his convictions fails.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jonathan Tukel

---

a possible theory. Thus, based on its reasonable view of the evidence, the trial court was confronted with deciding who threw the gun *out the passenger window*: Percy or defendant.