*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
June 18, 2020

v

No. 345836
Ottawa Circuit Court
LC No. 18-041983-FH

MEGAN MARIE IPEMA,

        Defendant-Appellant.

Before: MURRAY, C.J., and JANSEN and MARKEY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of third-degree child abuse, MCL 750.136b(5), and was sentenced to serve 90 days in jail. We affirm.

Defendant struck her nine-year-old son with a belt on his exposed buttocks and lower leg in response to his refusal to shovel the driveway, and his continued disruptive behavior. The child had a number of bruises, and the day following the incident, defendant called child protective services (CPS) to ask for assistance. The child's bruises were then documented by the police and at the emergency room, which led to this prosecution.[1]

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to support her conviction beyond a reasonable doubt. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979). To determine if the prosecutor produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of

---

[1] We do not opine on the decision to prosecute defendant, which is a matter exclusively in the province of the prosecutor. *People v Jones*, 252 Mich App 1, 8; 650 NW2d 717 (2002)

fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from the evidence, are considered to determine whether the evidence was sufficient to sustain the conviction. *Hardiman*, 466 Mich at 429.

> MCL 750.136b(5) provides:
>
> A person is guilty of child abuse in the third degree if any of the following apply:
>
> (a) The person knowingly or intentionally causes physical harm to a child.
>
> (b) The person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, and the act results in physical harm to a child.

"Physical harm" means "any injury to a child's physical condition." MCL 750.136b(1)(e). Here, Officer Mark Deleeuw examined and photographed extensive bruising to the child's "buttocks area, as well as, his legs, thigh, and up his back." The photographs were admitted into evidence, and defendant acknowledged that the bruising was caused by her hitting the child with a belt. Nurse Practitioner Daniel Hoekstra, who examined the child in the emergency room, reported that the child said that he was spanked on his bare buttocks with a belt and hand. Hoekstra observed 8 to 10 linear lesions and bruises bilaterally across the child's buttocks, with bruising on the sides of the buttocks and hamstring area of the right leg, and noted six to eight additional linear injuries across the child's right hamstring area with several round injuries in different areas. According to Hoekstra, the linear lesions were consistent with the child's report of a belt striking him. This evidence was sufficient for a jury to conclude beyond a reasonable doubt that defendant caused "physical harm" to the child.

We disagree with defendant's argument that there was no evidence that she "knowingly or intentionally" caused physical harm. Knowing is defined as "[h]aving or showing awareness or understanding; well-informed," and "deliberate" or "conscious." *People v Maynor*, 256 Mich App 238, 241-242; 662 NW2d 468 (2003), citing *Black's Law Dictionary* (7th ed) (quotation marks omitted). "Knowing" includes both actual and constructive knowledge, and knowledge and intent may "be inferred from one's actions." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997) (citations omitted). Defendant argues that her intent was to reasonably discipline her child, not to harm her child, and the child abuse statute does not prevent a parent "from taking steps to reasonably discipline a child, including the use of reasonable force." MCL 750.136b(9).

There was evidence that could have persuaded a jury to conclude that defendant's actions were not knowing and intentional. For example, defendant testified that the child had been having behavioral difficulties, including aggression and defiance, for several years, and that she had unsuccessfully attempted nonphysical methods of discipline, such as grounding, rewards, removing privileges, and time outs. Thus, defendant had a history of offering seemingly appropriate discipline. She had also pursued appropriate interventions to help the child, including volunteering at the school where she was eventually hired. Evidence showed that defendant also took the child to a psychiatrist, Bobga Fomunung, M.D., who had been treating the child since

2013, and had diagnosed him with attention deficit disorder, and mild to moderate autism spectrum disorder. Given the child's continued aggressive behavior at home and at school, Dr. Fomunung had prescribed and adjusted medications, referred the child for behavioral therapy, and had provided guidance for defendant. Notably, after the spanking defendant told Dr. Fomunung that she had hurt the child, and was frustrated because she needed help with his behavior, an action that would not have been as likely if the initial intent had been to harm the child. Additionally, the day following the spanking, defendant noticed the child's injuries, and felt sadness and remorse, prompting her to call CPS in an attempt to obtain advice or services to assist her in addressing the child's behavioral difficulties.

Nonetheless, other evidence supported the jury's finding that her intent or knowledge when spanking the child with the belt was that he would be hurt. Notably, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Defendant and the child had been arguing, and defendant described herself as becoming frustrated, angry, and irritable as a result. She warned the child that she would spank him, and eventually brought him in from outside to spank him. Witnesses estimated that he had been struck 8 to 10 times across the buttocks, and six to eight times across his upper right leg. The child recalled that defendant was holding him down with her foot on his back, and had a "mad face." Defendant noted that the child was smirking at her, and kicking and hitting her, and it was her husband who intervened to stop the spanking because it had gone too far. The child observed that his buttocks were purple and bleeding. Reasonable inferences arising from this evidence were sufficient to support a finding that the striking of the child went beyond reasonable discipline and showed a knowledge that the child would be injured. "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428. The extent of the hitting revealed by the injuries and the nature of the incident were sufficient to establish an intense physical beating that resulted from an intent to cause the injury or knowledge that injury would occur. Accordingly, the evidence was sufficient to establish the intent element of third-degree child abuse.

II. IRRELEVANT EVIDENCE

Defendant next argues that evidence that corporal punishment is emotionally harmful to a special needs child should not have been admitted because it was irrelevant. Defendant did not object to this testimony, so we review its admission for plain error affecting substantial rights. MRE 103(d); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763-764 (quotation marks and citation omitted). We find no error.

Generally, relevant evidence is admissible, and irrelevant evidence is not. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Under this broad definition," evidence that is useful in shedding light on any material point is admissible. *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001).

To be relevant, "the matter sought to be established by the evidence must be 'in issue.' " *People v McKinney*, 410 Mich 413, 418; 301 NW2d 824 (1981).

Dr. Fomunung, an expert in behavioral health, described the information he had supplied to defendant about addressing the behavioral problems of a child with special needs. The prosecutor asked Dr. Fomunung whether he ever recommended physical punishment of a special needs child, and he responded that he never recommended striking a child. He affirmed that parents have a right to use reasonable corporal punishment, but opined that it would be physically and emotionally harmful to this child.

Defendant argues that Dr. Fomunung's comment that physical discipline was emotionally harmful was irrelevant because emotional harm was not included in the elements of the crime. However, a conviction of third-degree child abuse requires the prosecutor to prove that the defendant "knowingly or intentionally caused physical harm to a child." MCL 750.136b(5). See also *People v Sherman-Huffman*, 466 Mich 39, 41; 642 NW2d 339 (2002). It is evident that the prosecutor was questioning Dr. Fomunung about a fact at issue, which was whether defendant's spanking of the child was intended to discipline him, or to harm him. Defendant had asserted that spanking was a progressive form of discipline after nonphysical methods had failed to curb her child's problematic behaviors. And the child abuse statute is not applied to prevent a parent "from taking steps to reasonably discipline a child, including the use of reasonable force." MCL 750.136b(9). Thus, Dr. Fomunung's opinion regarding defendant's knowledge about corporal punishment as discipline, and whether physical punishment could be considered reasonable discipline of the child, were relevant to material issues. Dr. Fomunung's comment—that emotional harm was one of the reasons that physical discipline was inappropriate in this case— was related to why he does not recommend to parents of autistic children, including defendant, that they utilize corporal punishment.

Contrary to defendant's argument, Dr. Fomunung's information about what constitutes reasonable discipline was not irrelevant because it was not first demonstrated that defendant was aware of Dr. Fomunung's opinion about physical discipline. Defendant reasons that the actual educational materials that Dr. Fomunung provided to defendant were not published to the jury so that the jury would be able to determine what defendant knew. However, the jury did know that the materials did not include a recommendation for using physical discipline. Moreover, the testimony that using physical discipline was harmful to a child was relevant because it was a part of Dr. Fomunung's opinion about why physical discipline was not recommended in the information about managing the child's behavior that he had provided to defendant. The testimony was directly relevant to defendant's assertion that she had struck the child in an act of reasonable discipline. The questions about Dr. Fomunung informing defendant about what constituted appropriate discipline, including his excluding that it was feasible to consider corporal punishment as appropriate discipline of a special needs child, addressed a central question of this case. Accordingly, it was not plain error to admit this evidence.

Defendant argues that his attorney provided ineffective assistance by failing to object to Dr. Fomunung's opinion about the emotional harm of the physical punishment. A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This right "encompasses the right to the 'effective' assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To demonstrate an

ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient," and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citations omitted). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.* The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). Because Dr. Fomunung's testimony was relevant to whether defendant's hitting the child with the belt was reasonable discipline, any objection would not have been meritorious. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

## III. EXPERT EVIDENCE

Finally, defendant argues that an expert's opinion that the child had been hit 16 times with a belt should not have been admitted because it was unreliable, and that his trial counsel provided ineffective assistance by failing to object.

MRE 702 provides for the admission of expert opinion that results from "scientific, technical, or other specialized knowledge," and must assist the trier of fact. Specifically, MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To determine whether expert testimony is admissible under MRE 702, a searching inquiry is mandated. The inquiry must include not just consideration of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from the data. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004). The trial court must consider many factors to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 592-593; 113 S Ct 2786; 125 L Ed 2d 469 (1993). The opinion of an otherwise qualified expert must also be shown to be reliable, including the data underlying the expert's theories and the methodology by which the expert draws his conclusions. *People v Yost*, 278 Mich App 341, 394; 749 NW2d 753 (2008).

Defendant argues that the expert testimony of Hoekstra regarding the number of times the child was struck with a belt should have been excluded. Hoekstra detailed the child's injuries, and estimated that there were 8 to 10 horizontal linear lesions on each side of the buttocks, and six to eight areas of linear horizontal bruising on the right upper leg. Hoekstra testified that there were

16 total injuries on the buttocks, and six to eight on the leg, and that the injuries were consistent with strikes from a belt.

On cross-examination, Hoekstra clarified that there were 8 to 10 bruises on each of the buttocks, and across the leg. Defendant's counsel asked: "And, do you have any expertise [in] regards to determining how many strikes, how many times this kid was struck to have cause -- caused these bruises?" Hoekstra responded:

> I—I don't know that for sure, but there seemed to be about, you know, like I say, each, you know, eight to—eight—six to eight, eight to ten on each area. It's hard to know if the bilateral sides of the buttock were from one swipe, and maybe on one side then kind of going over to the other, or if they were all individual, separate, I don't have any way to determine that, but certainly, it—it—it's one or the other, I would say. And, you know, unless there was two belts being used, I would think that—I would believe that each strike would be equivalent with one or, excuse me, each ecchymosis area, ecchymotic area, would be consistent with one strike.

Hoekstra testified that the number of strikes was "closer to 16," rather than the larger number of injuries that the prosecutor's questions suggested, because the bruises on both sides of the buttocks could have been caused by one belt strike. However, he could not be sure if one strike traversed the buttocks, or if bruises on each side were caused by separate strikes. Defendant's counsel asked again if Hoekstra had any expertise or training to determine the number of strikes, and Hoekstra responded that there was no formal training to detect distinct bruises, but his determination was based on "common knowledge in seeing injuries in the emergency department."

Defendant argues that Hoekstra's opinion about the number of strikes was based on speculation, and that the trial court should have sua sponte excluded the evidence. An expert's opinion testimony is limited to the expert's area of expertise. *People v Jones*, 95 Mich App 390, 394; 290 NW2d 154 (1980). An expert must show that any opinion based on data expresses conclusions reached through reliable principles and methodology. *Gilbert*, 470 Mich at 782. After an expert is qualified to give an opinion, the scope of the testimony is not limited by MRE 702, but the "expert must be an expert in the precise problem as to which he undertakes to testify." *People v Beckley*, 434 Mich 691, 725-726; 456 NW2d 391 (1990) (quotation marks and citation omitted). "Where [expert] testimony is purely speculative, it should be excluded or stricken." *Phillips v Deihm*, 213 Mich App 389, 402; 541 NW2d 566 (1995).

Hoekstra did not speculate about the number of times that defendant struck the child. He testified that he was not certain about the number of strikes because each could have caused bruising on one side of the buttocks, or both sides of the buttocks. Thus, the jury was presented with his opinion that there may have been a minimum of 16 strikes, and a maximum of 24 strikes. Hoekstra testified that he based his opinion regarding the number of strikes on the number of injuries observed, and on "common knowledge in seeing injuries in the emergency department." MRE 702 provides that an expert may be qualified "by knowledge, skill, experience, training, or education." Thus, the opinion was based on his observations and deductions based on those observations. Defendant has not demonstrated that Hoekstra's testimony about the number of strikes was speculative or unreliable.

Regarding the ineffective assistance argument, Hoekstra testified on direct examination that the child's injuries were created by belt strikes, and that there were 26 injuries. Therefore, the jury may have been left with the impression that there were 26 belt strikes after Hoekstra's direct examination, and trial counsel's cross-examination successfully had Hoekstra limit the number of belt strikes to 16, and attempted to undercut the reliability of Hoekstra's testimony by questioning the basis of his findings. Thus, defense counsel's cross-examination of Hoekstra did not constitute deficient performance, but appeared to be part of a strategy favoring defendant by limiting the impact of Hoekstra's direct testimony.

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Jane E. Markey